IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JEFFREY J. BIGGS,

    Petitioner,               No. CIV S-07-0470 WBS CKD P

    vs.

ARNOLD SCHWARZENEGGER,

    Respondent.            FINDINGS & RECOMMENDATIONS

_____/

        Petitioner, a state prisoner represented by counsel, has filed an amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges the Governor's 2006 decision reversing the 2005 decision by the California Board of Parole Hearings ("Board") finding him suitable for parole. (Dkt. No. 18 ("Ptn.").) Petitioner claims the Governor's decision (1) violated his federal due process rights because there was insufficient evidence to find him unsuitable for parole; and (2) violated the ex post facto clause of the Constitution, because the state constitutional provision allowing the Governor to review and reverse a Board parole determination was passed after petitioner's 1981 offense and applied retroactively to increase the length of his sentence. At issue is respondent's April 14, 2011 motion to dismiss arguing that, because petitioner was released on parole in August 2010, he has received the relief he requested and the petition is moot. Alternatively, respondent argues that the due process and ex post facto

1

claims should be dismissed because petitioner has not stated a cognizable federal claim pursuant to section 2254.  (Dkt. No. 47 ("Mot.").)  Respondent's motion to dismiss came on regularly for hearing on October 5, 2011.  Ann McClintock appeared on behalf of petitioner, who did not attend in person.  Krista Pollard appeared on behalf of respondent.

Upon review of the documents in support of and in opposition to the motion, upon hearing the arguments of the parties, and good cause appearing therefor, the court concludes that the motion to dismiss should be granted.

## BACKGROUND

In 1981, petitioner was involved in a business with a family friend, Larry Lowery, that dealt in stolen computer parts.  In September 1981, Lowery had been criminally charged and faced trial in connection with some $3 million worth of stolen computer parts.  David Roberts was to be a witness in the case against Lowery.  Lowery and others hatched a scheme to murder Roberts before he could testify, and Roberts was bludgeoned and stabbed to death.  Petitioner did not witness the murder but was involved in this scheme and in the concealment of Roberts' body.  Afterward, petitioner went back to work for Lowery.  He was not arrested for the murder until July 1984.  (Ptn. at 2-4; see Dkt. 18-7 at 2-3.)  In 1987, he pled no contest to first degree murder in the San Mateo County Superior Court and was sentenced to an indeterminate term of 25 years to life.  (Id. at 1-2; Dkt. No. 20-1 at 2 (abstract of judgment).)

In December 2005, the Board issued a decision granting parole to petitioner, pending gubernatorial review.  (Dkt. No. 18-5 at 57-66.)  In support of its decision, the Board noted that petitioner

> has no juvenile record, assault of others while in prison.  He has enhanced his ability to function within the law.  He's participated in education program . . . self-help, therapy, . . . vocational programs.  He lacks any criminal history of violent crime. . . . He has realistic parole plans and has job offers and family support.  He has maintained family ties while in prison. . . . He has maintained positive institutional behavior, which indicates . . . self control.

(Id. at 58-59.)  One Board member described him as "very bright . . . exceptional."  (Id. at 64-65.)

In May 2006, the Governor invoked his authority pursuant to California Penal Code section 3041.2 to reverse the Board's grant of parole. (Dkt. No 18-6 at 2-4.) His cited reasons included that petitioner "was an active, willing participant in the planning and carrying out of a murder intended to prevent testimony in a criminal trial" and that the murder was "carried out in a brutal fashion." (Id. at 4.) The Governor noted that petitioner "[a]t age 45 now, . . . has matured and made creditable gains in prison." However, the Governor concluded that the "gravity of [the offense] outweighs the positive factors supporting [petitioner's] parole suitability" such that "his release from prison would pose an unreasonable risk of danger to society." (Id. at 4.)

On July 3, 2006, petitioner filed a petition for writ of habeas corpus in the San Mateo County Superior Court challenging the Governor's reversal. (Dkt. No. 20-1 at 9-23.) The superior court denied the petition on August 22, 2006 in a reasoned decision. (Dkt. No. 20-3 at 3-10.) Petitioner next filed a petition for writ of habeas corpus in the California Court of Appeal, First Appellate District, which issued a summary denial on November 22, 2006. (Dkt. No. 20-6 at 1.) Petitioner then filed the petition in the California Supreme Court, which issued a summary denial on February 14, 2007. (Dkt. No. 20-6 at 36.)

On March 12, 2007, petitioner originated this action by filing a petition for federal writ of habeas corpus. On August 27, 2007, he filed the operative amended petition. Respondent filed an answer on October 25, 2007, and petitioner filed a traverse on January 23, 2008.

On May 20, 2008, the magistrate judge previously assigned to this case granted petitioner's motion to conduct discovery into the Governor's record of reviewing, affirming, and reversing Board grants of parole to inmates with indeterminate sentences. (Dkt. No. 34.) The court explained that, "without foreclosing a more fully briefed challenge, this court finds there is sufficient merit to petitioner's claims to allow him to proceed with discovery" pursuant to Garner v. Jones, 529 U.S. 244 (2000), which allowed for as-applied ex post facto challenges in some circumstances. (Id. at 3-5.) On November 20, 2009, the previously assigned magistrate judge

\\\\

granted petitioner's motion for additional discovery into the Governor's parole review process.[1] (Dkt. No. 38.)

On August 18, 2010, the Office of the Governor informed petitioner that it declined to review the Board's most recent grant of parole. (Mot., Ex. A (Dkt. 47-1).) Accordingly, petitioner was released on parole on August 19, 2010. (Dkt. No. 48 ("Opp.") at 4.)

On September 22, 2010, respondent filed a motion to dismiss the petition, arguing that it was mooted by petitioner's release. (Dkt. No. 40.) Petitioner did not file an opposition. The previously assigned magistrate judge issued findings and recommendations granting the motion, but later vacated this decision because it appeared that respondent failed to properly notice the motion for hearing. (Dkt. No. 42, 46.) On March 8, 2011, the previously assigned magistrate judge denied respondent's first motion to dismiss without prejudice. (Dkt. No. 46.)

Respondent filed the instant motion to dismiss on April 14, 2011. Petitioner filed an opposition, and respondent filed a reply. As noted above, a hearing on the motion was held on October 5, 2011.

**ANALYSIS**

I. Mootness

The first question before the court is whether petitioner's August 2010 release on parole renders the petition moot.

A. Parties' Arguments

Respondent argues that a claim for wrongful denial of parole is mooted by the grant of parole. In support, respondent cites Brady v. U.S. Parole Comm'n, 600 F.2d 234, 236 (9th Cir. 1979) (holding that prisoner's appeal from the dismissal of his habeas petition attacking the Parole Commission's parole denial was moot because the prisoner had been released on

---

[1] At the October 5, 2011 hearing, petitioner's counsel stated that numerous documents had been received in discovery and were ready for review and analysis, should this case go forward.

1  parole); and <u>Fendler v. U.S. Bureau of Prisons</u>, 846 F.2d 550, 555 (9th Cir. 1988) (holding that,
2  where petitioner challenged parole denial and sought only the remedy of immediate release, his
3  subsequent release on parole mooted his claim). Respondent also argues that the petition is moot
4  because petitioner "has received all the relief he requested, release on parole." (Mot. at 3.)

5  Petitioner counters that his release on parole does not render the petition moot
6  because the court can still fashion a meaningful remedy "by ordering, in essence, Petitioner's
7  discharge from parole." (Opp. at 4.) He asserts that his parole term cannot exceed five years;
8  thus, "had the Governor not denied [Biggs] parole in May 2006, Biggs would have begun serving
9  this five year parole no later than December 2008, and . . . be discharged from parole in December
10 2013. Instead, Biggs remained unlawfully in prison until August 19, 2010 and is not expected to
11 be discharged from parole until August 2015." (<u>Id</u>.) He requests an order "directing CDCR to
12 credit [time] Biggs served in prison in violation of his constitutional rights towards his [five-year]
13 period of parole supervision," and asserts that the availability of this relief means the petition is
14 not moot. (<u>Id</u>. at 4.)

15 B. <u>Discussion</u>

16  Article III permits a federal court to exercise jurisdiction only in the existence of a
17 case or controversy. <u>Spencer v. Kemna</u>, 523 U.S. 1, 7 (1998). Whether a live case or controversy
18 actually exists turns on whether a federal court can grant effective relief "in the event that [it]
19 decides the matter on the merits." <u>NASD Dispute Resolution, Inc. v. Judicial Council of Cal.</u>, 488
20 F.3d 1065, 1068 (9th Cir. 2007). Mootness is jurisdictional, <u>U.S. v. Brandau</u>, 578 F.3d 1064 (9th
21 Cir. 2009), and it requires that a petitioner continue to have a "personal stake in the outcome of
22 the lawsuit." <u>U.S. v. Verdin</u>, 243 F.3d 1174, 1177 (9th Cir. 2001). A party alleging mootness
23 bears "a heavy burden in seeking dismissal." <u>Rosemere Neighborhood Ass'n v. U.S.</u>
24 <u>Environmental Protection Agency</u>, 581 F.3d 1169 (9th Cir. 2009).

25  Several courts have considered whether release on parole moots a petitioner's
26 federal habeas challenge to an earlier parole denial. "The restrictions imposed on a parolee

5

constitute a concrete injury for purposes of a mootness analysis. . . . Therefore, release on parole does not moot a habeas challenge to a prior parole denial in all instances." Cowans v. Hartley, 2010 WL 582104 at *(E.D. Cal. 2010), citing Spencer v. Kenna, 523 U.S. 1, 7-8 (2001) (restrictions imposed by the terms of the parole constitute a concrete injury).[2]

The general rule that emerges from these cases is that whether such a challenge is moot depends on whether petitioner committed his crime before the January 1, 1983 effective date of Cal. Penal Code § 3000.1, which imposes lifetime parole on certain offenders.

Section 3000.1 states:

> (a) In the case of any inmate sentenced under [California Penal Code] § 1168 for any offense of first or second degree murder with a maximum term of life imprisonment, <u>the period of parole, if parole is granted, shall be the remainder of the inmate's life.</u>
>
> (b) Notwithstanding any other provision of law, when any person referred to in subdivision (a) has been released on parole from the state prison, and has been on parole continuously for ... five years in the case of any person imprisoned for second degree murder, since release from confinement, the board shall, within 30 days, discharge that person from parole, unless the board, for good cause, determines that the person will be retained on parole. The board shall make a written record of its determination and transmit a copy of it to the parolee.

(Emphasis added.) Courts have held that, where petitioner's commitment offense occurred after January 1, 1983, he serves an "indeterminate" parole term and is only eligible for release from parole after a mandatory five years on parole. Courts have concluded there is no way to apply "credits" to such a parole term such as petitioner requests here. Thus, if petitioner's commitment offense had occurred after January 1, 1983, he would be a "lifetime parolee" and his petition

---

[2] In Fendler, cited by respondent, the Ninth Circuit did not reach the issue of whether, given his release on parole, other habeas relief was available to petitioner. See 846 F.2d at 555 ("Fendler asserts, though, that his habeas corpus claims against the Parole Commission were not mooted by his release on parole because, had he been released earlier on parole, he would have been eligible sooner for Parole Commission review of his eligibility for early termination of parole supervision under 18 U.S.C. § 4211 (1982). We need not reach this claim because Fendler did not raise it below.")

would be moot. See, e.g., Masoner v. Kane, 2011 WL 863289 at *4 (C.D. Cal. Feb. 17, 2011) (release on parole mooted challenge to Governor's earlier denial of parole where commitment offense occurred in 1987) (collecting cases); Rios v. Mendoza-Powers, 2010 WL 3397417 at *5 (E.D. Cal., Aug. 27, 2010) ("The overwhelming trend is to deny a pending habeas petition as moot if the petitioner is released from prison and § 3000.1 applies") (collecting cases).

In the instant case, however, petitioner committed the underlying crime in September 1981, prior to the effective date of § 3000.1. For prisoners with determinate parole terms (i.e., convictions for crimes that occurred prior to January 1, 1983), release on parole generally does not moot a federal habeas challenge to an earlier parole denial. At the hearing, counsel for petitioner confirmed that he is serving a determinate parole term. In his briefing, petitioner asserts that "[t]he version of California Penal Code 3000 in effect" in 1981 provided in pertinent part:

> (b) In the case of any inmate sentenced under Section 1168, the period of parole shall not exceed five years in the case of an inmate imprisoned under a life sentence . . . unless . . . the board for good cause waives parole and discharges the inmate from custody of the department.

(Opp. at 4, citing Cal. Penal Code § 3000 (1977).) Petitioner asserts that, under this provision, "any term of parole for Biggs cannot exceed five years. Indeed, Respondents have informed Petitioner that his term will discharge after five years." (Id.) In such cases, courts have held that a federal habeas court may fashion a remedy for petitioner even after his release on parole: an order directing the CDCR to "credit time served in prison in violation of Petitioner's constitutional rights towards Petitioner's determinate period of parole supervision." Thomas v. Yates, 637 F. Supp. 2d 837, 841 (E.D. Cal. 2009); see Masoner at *4 (collecting cases); Cowans at *3 (collecting cases); Rios at *5; see also Lewis v. Veal, 2011 WL 475462 (E.D. Cal., Feb. 3, 2011) (where commitment offense occurred in 1981, court concluded that released inmate's ex post facto challenge to earlier parole denial "would not be dismissed in light of the fact that 'plaintiff could still benefit by a favorable ruling that may result in the shortening of his parole.'")

7

1    As to respondent's argument that petitioner originally sought only release on parole
2 and cannot belatedly ask for a different form of relief, the court notes that in the amended petition,
3 filed in August 2007, petitioner sought the remedy of release and "any and all other relief to which
4 he is entitled." (Ptn. at 10.) At the hearing, counsel for respondent argued that this language was
5 merely a "pro forma pleading" that did not serve to put respondent on notice that petitioner sought
6 any relief besides release on parole. Counsel for petitioner argued, more persuasively in the
7 court's view, that the "any other relief" language was not merely pro forma but intended to
8 anticipate changes in circumstances during the course of a years-long federal habeas litigation.
9 The court concludes that this language gave respondent sufficient notice that petitioner sought any
10 relief available to him if and when the petition was granted. Moreover, in the cases noted above,
11 the key inquiry was whether habeas relief was available to petitioner given the determinate or
12 indeterminate nature of his parole term, not whether he had explicitly asked for a shortened parole
13 term in the event that his habeas petition was granted after his release on parole.

14   In light of the above, the court concludes that the instant petition should not be
15 dismissed for mootness.

## II. Due Process

17   In the amended petition, petitioner claims that the Governor's 2006 decision to
18 deny parole was not supported by sufficient evidence that petitioner posed a threat to public
19 safety, in violation of petitioner's Fourteenth Amendment right to due process.. (Ptn. at 6-7.)

20   Since the filing of the amended petition, this area of federal habeas law has been
21 transformed by the U. S. Supreme Court's decision in Swarthout v. Cooke, 131 S. Ct. 859, 862-
22 863. In Swarthout, the Supreme Court reviewed two cases in which California prisoners were
23 denied parole – in one case by the Board, and in the other by the Governor after the Board had
24 granted parole. Id. at 860-61. The Supreme Court noted that when state law creates a liberty
25 interest, the Due Process Clause of the Fourteenth Amendment requires fair procedures, "and
26 federal courts will review the application of those constitutionally required procedures." Id. at

862. The Court concluded that in the parole context, however, "the procedures required are minimal" and that the "Constitution does not require more" than "an opportunity to be heard" and being "provided a statement of the reasons why parole was denied." Id. The Supreme Court therefore rejected Ninth Circuit decisions that went beyond these minimal procedural requirements and "reviewed the state courts' decisions on the merits and concluded that they had unreasonably determined the facts in light of the evidence." Swarthout, 131 S. Ct. at 862. In particular, the Supreme Court rejected the application of the "some evidence" standard to parole decisions by the California courts as a component of the federal due process standard. Id. at 862-863.

At the hearing on October 5, 2011, petitioner's counsel acknowledged that, in the wake of Swarthout, petitioner's due process claim was not cognizable under section 2254. The court agrees, and will recommend that respondent's motion to dismiss be granted as to this claim.

III. Ex Post Facto

A. Parties' Arguments

Petitioner claims that the Governor's parole reversal violates the ex post facto clause because the state constitutional provision allowing for gubernatorial review of a Board parole determination (Art. 5, section 8(b)) was passed in 1988 and applied retroactively to petitioner, who committed his offense in 1981.

Respondent argues that petitioner fails to state a cognizable ex post facto claim under AEDPA because the state courts, in denying this claim, did not violate clearly established federal law. Petitioner counters that he has a federal habeas claim because the state courts' denial of his ex post facto claim was unreasonable under AEDPA. Before describing the parties' arguments in greater detail, the undersigned will set forth the state court opinion at issue.

The last reasoned state court decision on petitioner's ex post facto claim was issued by the San Mateo County Superior Court. Its analysis consisted of one paragraph, stating:

> The Rosenkrantz[3] court considered at length the question of whether the Governor's review and subsequent reversal of a grant of parole violated the ex post facto clauses of the state and federal constitution. [Citation.] The court concluded that there was no ex post facto violation. Accordingly, the petition is denied as to the [ex post facto] claim.

(Dkt. No. 20-3 at 9.)

Thus, the state courts essentially adopted the California Supreme Court's analysis in Rozenkrantz. In that case, the petitioner (Rosenkrantz) argued that

> because he committed the underlying offense in 1985, prior to the adoption of Article V, section 8(b), in 1988, the Governor's denial of parole pursuant to the review authority afforded by Article V, section 8(b), constitutes a violation of the ex post facto provisions of the federal and state Constitutions. (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9.)

29 Cal. 4th at 637. This is also what petitioner claims in the amended petition.

The Rosenkrantz court held:

> [P]etitioner's ex post facto claim is not meritorious. The governing authorities establish that the type of procedural change implemented by Article V, section 8(b)—i.e., a change that simply created a new level of review, within the executive branch, of parole decisions concerning a specified category of prisoners (thereby changing the identity of the ultimate decision maker within the executive branch for such parole decisions), but that did not change the substantive standard governing the grant or denial of parole—is not the type of change to which the ex post facto clause applies.

Id. at 638 (emphasis added). "Furthermore," the Rosenkrantz court stated,

> petitioner's claim that the ex post facto clause prohibits the Governor from exercising the authority afforded by Article V, section 8(b), in any case in which a prisoner committed the underlying offense prior to the adoption of that provision, has been squarely and uniformly rejected by each of the prior California and federal decisions that have addressed the issue.

Id. at 641 (emphasis added).

---

[3] In re Rosenkrantz, 29 Cal. 4th 616, 636-652 (2002).

10

One such key decision was Johnson v. Gomez, 92 F.3d 964 (9th Cir. 1996), in which the Ninth Circuit, "after reviewing a number of leading ex post facto cases decided by the United States Supreme Court . . . [citations], agreed with [the state courts] that the application of Article V, section 8(b), to a prisoner who had committed his or her offense prior to the enactment of that provision did not violate the ex post facto clause." Rosenkrantz, 29 Cal. 4th at 643.

The California Supreme Court rejected Rosenkrantz's argument that a recent U.S. Supreme Court case, Garner v. Jones, 529 U.S. 244 (2000), governed his case instead of Johnson. Rosenkrantz claimed that, under Garner, he could bring an as-applied challenge to Article V, section 8(b), by showing that "as applied to his own sentence the law [adding a gubernatorial level of review to parole grants] created a significant risk of increasing his punishment." Rosenkrantz, 29 Cal. 4th at 648-649, citing Garner, 529 U.S. at 255. The Rosenkrantz court disagreed, stating:

> The high court's decision in Garner did not involve a legislative or constitutional provision even remotely similar to Article V, section 8(b), and nothing in Garner questions either the validity of the Arafiles[4] and Johnson decisions themselves or the high court decisions upon which the opinions in Arafiles and Johnson relied. . . . . The extremely broad scope and wide-ranging implications of petitioner's reading of Garner make it evident, in our view, that petitioner improperly has taken the language of Garner out of context and seeks to have that language applied in a manner never intended by the high court.

Rosenkrantz, 29 Cal. 4th at 649-650. The court therefore concluded that Rozenkrantz's ex post facto claim lacked merit.

In his motion to dismiss, respondent argues that state courts here correctly applied federal law as interpreted by the Ninth Circuit in Johnson, supra, in finding no ex post facto claim based on Article V, section 8(b). Even if Garner arguably does apply here, he argues, the state courts were not "unreasonable" in concluding otherwise because whether Garner applies to an ex post facto challenge to Article V, section 8(b) is "subject to reasonable interpretation." (Mot. at

---

[4] In re Arafiles, 6 Cal. App. 4th 1467 (1992).

3.) Moreover, even if the as-applied challenge described in Garner were available to petitioner, petitioner could not state a federal claim, as he has not shown that "as applied to his own sentence the law created a significant risk of increasing his punishment." (Id. at 5.)

Petitioner counters that the state court was objectively unreasonable in determining that Garner did not apply to an ex post facto challenge to Article V, section 8(b).[5] In support, petitioner cites Thomas v. Yates, 637 F. Supp. 2d 837, (E.D. Cal. 2009) (discussed supra on the issue of mootness), in which the district court held that the state courts had erred in concluding that "petitioner's ex post facto claim was foreclosed as a matter of law by Rosenkrantz." Petitioner cites the Thomas court's footnote criticizing Rosenkrantz, which reads:

> The Rosenkrantz Court failed to conduct an as-applied analysis of Article V, section 8(b) because, in its view, the "procedural nature" of Article V, section 8(b) rendered Garner inapplicable to it. Rosenkrantz, 29 Cal.4th at 650, [citations]. The Rosenkrantz Court's failure to conduct an as-applied analysis is illustrated by the Court's assumption that "were petitioner's ex post facto argument correct, every gubernatorial reversal of a Board decision granting parole in these cases would have been constitutionally flawed." Id. at 638. Garner teaches, however, that a neutral parole statute may be violative of the Ex Post Facto with respect to some prisoners but not to others. 529 U.S. at 255, (conducting as-applied analysis of petitioner's claim); see also Nulph v. Faatz, 27 F.3d 451, 456 (9th Cir.1994) (per curiam) (recognizing that "even if the new law is not disadvantageous to defendants in general, an individual will satisfy the detriment requirement [of an ex post facto challenge] if he shows that it can 'be said with assurance' that he would have received less severe punishment under the prior scheme"). It is thus clear that Rosenkrantz does not reflect an as applied analysis. See Heller v. Powers-Mendoza, 2007 WL 963330 *1 n. 1, 2007 U.S. Dist. LEXIS 27432 *3 n. 1 (E.D.Cal.2007) (disapproving of the holding in Rosenkrantz because the Rosenkrantz Court failed to conduct proper as-applied analysis under Garner ).

---

[5] Petitioner also argues that his case is factually distinguishable from Rosenkrantz because, whereas the Board found petitioner suitable for parole, the Board only released Rosenkrantz on parole pursuant to a court order. However, the California Supreme Court's decision did not turn on that fact, but on a detailed analysis of whether the challenged constitutional provision violated the ex post facto clause. See 29 Cal. 4th at 638 ("The flaw in petitioner's ex post facto claim . . . is not confined to the particular circumstances of his case.") Thus the question is whether the court's reasoning in Rosenkrantz is unreasonable under AEDPA.

12

637 F. Supp. 2d at 849, n.9. Here, petitioner asks the court to follow <u>Thomas</u> in concluding that the state courts – effectively the California Supreme Court in <u>Rosenkrantz</u> – were unreasonable in holding that he could not bring an as-applied ex post facto challenge to Article V, section 8(b) under <u>Garner</u>.

Similarly, petitioner cites <u>Thomas</u> in arguing that the Ninth Circuit's holding in <u>Johnson</u>, <u>supra</u>, does not preclude an as-applied challenge in this case. See 637 F. Supp. 2d at 850, 853-854 (holding that <u>Johnson</u> does not foreclose petitioner's ex post facto claim because, under the Supreme Court's intervening decision in <u>Garner</u>, "[p]etitioner may be entitled to relief if he can establish that as applied to him, Article V, section 8(b) creates a 'significant risk of prolonging his incarceration.'") In sum, petitioner argues that this court should follow <u>Thomas</u> and allow him to pursue an as-applied ex post facto claim challenging Article V, section 8(b).

B. <u>Discussion</u>

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA").[6] "Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. <u>Wright v. Van Patten</u>, 552 U.S. 120, 125 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See <u>e.g.</u>, <u>Carey v. Musladin</u>, 549 U.S. 70, 76 (2006). It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d). See <u>Woodford v. Visciotti</u>, 537 U.S. 19, 25 (2002). Petitioner's ex post facto claim arises under §

---

[6] Title 28 U.S.C. § 2254(d) establishes a precondition to federal habeas relief, not grounds for entitlement to habeas relief. <u>Fry v. Pliler</u>, 127 S. Ct. 2321, 2326-27 (2007).

13

2254(d) (1).

Clearly established federal law, as determined by Supreme Court, holds that a law violates the ex post facto clause if it: (1) punishes as criminal an act that was not criminal when it was committed; (2) makes a crime's punishment greater than when the crime was committed; or (3) deprives a person of a defense available at the time the crime was committed. Collins v. Youngblood, 497 U.S. 37, 52 (1990). A court may find an ex post facto violation if a change in the law "produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." California Dep't of Corrections v. Morales, 514 U.S. 499, 509 (1995). The Court has not articulated a specific formula for "identifying those legislative changes that have a sufficient effect on . . . punishments to fall within the constitutional prohibition on [ex post facto laws]." Id. However, the Court has found that changes that create only the most "speculative and attenuated possibility of producing the prohibited effect" of increasing punishment do not run afoul of the ex post facto clause. Id.

In Garner, 529 U.S. 244, the Supreme Court upheld Georgia's change in the frequency of parole hearings for prisoners serving life sentences from three to eight years in the face of an ex post facto challenge. In a recent case similar to this one, Judge Bommer explained:

> In [Garner], the Court recognized that the "disadvantage" with respect to an ex post facto violation can come from the terms of the statute themselves or from the statute's application to a particular defendant's sentence. See id. at 255. The Court stated that the relevant inquiry is that "[w]hen the rule does not by its own terms show a significant risk, the [petitioner] must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule." Id. It determined that the petitioner "must show that as applied to his own sentence the law created a significant risk of increasing his punishment." Id. at 255 (emphasis added). However, "[a]bsent a demonstration to the contrary, we presume the Board follows its statutory commands and internal policies in fulfilling its obligations." Id. at 256. Thus, as the United States Court of Appeals for the District of Columbia has noted:
>
> Garner outlines two ways in which "significant risk" can be established by a petitioner. First, it can be established if there are

        facial distinctions between old and new parole/reparole regulations. Second, "when the rule does not by its own terms show a significant risk," a claimant may also meet this burden "by [introducing] evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule." The controlling inquiry is one of practical effect.

Lewis v. Veal, 2011 WL 475462 at *6-7 (E.D. Cal. 2011), citing Fletcher v. Reilly, 433 F.3d 867, 877 (D.C.Cir. 2006).

        In reviewing federal habeas claims similar to petitioner's in recent years, district courts in California have reached a wide range of conclusions. Some courts have concluded that a petitioner challenging Article V, section 8(b) on ex post facto grounds is not entitled to federal habeas relief under either Johnson or Garner. E.g., Lewis, supra, 2011 WL 475462 at *5-6 (finding that petitioner was not entitled to federal habeas relief for his ex post facto challenge to Article V, section 8(b) under either Johnson or Garner); Hairston v. Kane, 2009 WL 773431at *10-12 (N.D. Cal. 2009) (same); Seiler v. Brown, 2007 WL 2501518 (N.D. Cal. 2007) (same). Another court simply determined that, "under the controlling Ninth Circuit authority in Johnson, Petitioner's ex post facto claim [challenging Article V, section 8(b)] is without merit." Marquez v. Rawers, 2008 WL 704298 (E.D. Cal. 2008).

        On the other hand, in Thomas v. Yates, discussed above, the court held that Garner "requires an as-applied analysis" of an ex post facto claim challenging Article V, section 8(b). 637 F. Supp. 2d at 846-848. The Thomas court also determined that Johnson did not foreclose petitioner's ex post facto challenge to Article V, section 8(b); that the state court decision following Rosenkrantz was objectively unreasonable; and that petitioner was entitled to an evidentiary hearing to pursue his as-applied claim under Garner. 637 F. Supp. 2d 837, 843-856; see also Heller v. Mendoza, 2007 WL 963330 (E.D. Cal. 2007) (declining to adopt findings and recommendations dismissing petitioner's ex post facto claim challenging Governor's denial of parole and, contra Rosenkrantz, finding that petitioner may have an as-applied claim under Garner). The Thomas court recently held an evidentiary hearing on petitioner's as-applied ex post

facto claim, and the parties have submitted post-hearing briefs; the court has yet to rule on the evidence presented.  See CIV S-05-1198 LJO DLB (E.D. Cal.), Dkt. No. 97-102.

In Lewis, in findings and recommendations later adopted by the district court, Magistrate Judge Bommer determined that petitioner's arguments were similar to those rejected by the Ninth Circuit in Johnson, supra, 92 F.3d 964 (9th Cir. 1996).  The undersigned agrees. Johnson reasoned that the state constitutional provision authorizing the Governor to review Board grants of parole did not violate the ex post facto clause, because "the law itself is neutral inasmuch as it gives the governor the power to either affirm or reverse a BPT's granting or denial of parole. Moreover, the governor must use the same criteria as the BPT.  The law, therefore, simply removes final parole decisionmaking authority from the BPT and places it in the hands of the governor."  Id. at 967.  The Johnson court held that this additional level of review was constitutional under Mallet v. North Carolina, 181 U.S. 589, 597 (1901) (holding no ex post facto violation where law passed after petitioner's crime allowed for higher court review of intermediate court decisions).  As in Lewis, the undersigned concludes that petitioner does not state an ex post facto claim under Johnson.

As to petitioner's claim that he should be able to pursue an as-applied claim under Garner, the undersigned cannot conclude that the California Supreme Court's decision in Rosenkrantz, precluding an as-applied claim under Garner and invoked by the state courts in this case, was objectively unreasonable under AEDPA.  It may well be that Rosenkrantz was out of step with other, better-reasoned decisions.  See Thomas, 637 F. Supp. 2d at 847-848 ("Nine circuit courts of appeals that have confronted ex post facto challenges to parole statutes post-Garner have recognized that Garner requires an as-applied analysis. [Citations.]")  However, the U.S. Supreme Court has recently emphasized that "[f]or purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'"  Harrington v. Richter, 131 S. Ct. 770, 785 (2011).  Thus, petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well

1 understood and comprehended in existing law beyond any possibility for fairminded
2 disagreement." Id. at 786-787.  Because Rosenkrantz does not, in this court's view, amount to
3 such an error, the court will recommend that the motion to dismiss be granted as to petitioner's ex
4 post facto claim.[7]

5    This being so, the court need not reach whether petitioner may introduce evidence
6 in support of an as-applied ex post facto claim.  See Cullen v. Pinholster, 131 S.Ct. 1388, 1412-
7 1413 (2011) (J. Breyer, concurring) (an evidentiary hearing is appropriate after it has been
8 determined that the state court decision was unreasonable, to allow petitioner to prove his claims).

9    Accordingly, IT IS HEREBY RECOMMENDED that the motion to dismiss (Dkt.
10 No. 47) be granted.

11    These findings and recommendations are submitted to the United States District
12 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one
13 days after being served with these findings and recommendations, any party may file written
14 objections with the court and serve a copy on all parties.  Such a document should be captioned
15 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
16 shall be served and filed within fourteen days after service of the objections.  The parties are
17 \\\\
18 \\\\
19 \\\\
20 \\\\
21

---

22-26 [7] The undersigned considered the possibility of staying these proceedings pending resolution in the Ninth Circuit or beyond, as it appears that, in Thomas, the question of whether the district court properly reviewed the state court's decision under AEDPA and/or granted an evidentiary hearing will be appealed. See id., Dkt. No. 99, fn. 7 (indicating that the respondent in Thomas "disagrees with the Court's lack of deference to the state court's decision" and has preserved these issues for appeal).  However, because the undersigned believes that under the highly deferential standard set forth in Richter, petitioner has not carried his burden to show that the state court's decision was objectively unreasonable, issuing a stay would not be the appropriate action to take.

1  advised that failure to file objections within the specified time may waive the right to appeal the
2  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3  Dated: October 19, 2011

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2
bigg0740.mtd